UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGERY KAIN,<br>        Plaintiff<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br>        Defendant | C.A. NO. 22-10436-DPW<br><br>**LEAVE TO FILE GRANTED BY ORDER DATED AUGUST 9, 2022** |

## SECOND AMENDED COMPLAINT AND JURY DEMAND

### PARTIES

1. Plaintiff Margery Kain is a resident of Boston, Suffolk County, Commonwealth of Massachusetts.

2. Defendant Liberty Mutual Insurance Company ("Defendant") is a corporation organized under the laws of the Commonwealth of Massachusetts, having a usual place of business in Boston, Suffolk County, Commonwealth of Massachusetts.

### FACTUAL ALLEGATIONS

3. Plaintiff is a white female, over the age of 50. The United States of America is her country of national origin.

4. Since March 13, 2000, Defendant has employed Plaintiff at its Boston headquarters as a "Senior Executive Assistant I" (hereinafter, "EA").

5. This job requires Plaintiff to provide support to high level executives, classified as "L2s".

6. Most recently, Plaintiff performed this work for the L2 in charge of Defendant's Global Employees Experience Office, one Enrique Huerta. Throughout her employment, Plaintiff has met or exceeded the performance expectations of her job.

1

7. In or about October 2020, Defendant notified Mr. Huerta that it was relocating him from its Boston office to Spain.

8. In or about this time, Defendant offered Plaintiff and certain other employees an early retirement option ("ERO").

9. Plaintiff did not elect to accept the ERO based on Mr. Huerta's representations, in or about October 2020 and January 2021, that she would continue in her role as his EA.

10. In late February 2021, Defendant evaluated Plaintiff's job performance for the previous year as exceeding expectations.

11. Despite this, Plaintiff was informed that because her pay grade had reached the maximum level (13), she was not eligible for a raise. She was further informed, however, that Mr. Huerta had succeeded in getting special permission for her to receive a $350.00 annual increase.

12. On or about April 9, 2021, Defendant informed Plaintiff and similarly situated EAs that their job titles would be changed to align with their "grade levels." Plaintiff and the other EAs were further informed that EAs, like Plaintiff, who had reached the highest pay grade level for supporting L2s (13), would never be eligible for raises.

13. Plaintiff raised her objections about Defendant's policy to Mr. Huerta. After speaking with Defendant's HR department, Mr. Huerta told Plaintiff that HR had confirmed Plaintiff and similarly situated employees could not ever receive raises.

14. In or about August 2021, Plaintiff was informed that she was being removed from her assignment with Mr. Huerta, and reassigned with other EAs to the "Procurement" department.

15. Subsequently, Plaintiff was informed that L2s would not be assigned to one EA, but would "pair up" and share an EA. EAs not so assigned were to be placed in a "pool" covering L2s and L3s. Plaintiff was re-assigned to covering three L3s from the Global Employee Team and one L3 and two L4s from the Sustainability Team.

16. Plaintiff subsequently learned that Defendant had replaced her with one Tonya Gloria as the EA assigned to Mr. Huerta, and now to another L2, one Dawn Frazier Bohnert, the L2 in charge of Diversity, Equity, and Inclusion ("DEI").

17. Ms. Gloria's qualifications to replace Plaintiff in this position, or to be selected for it instead of Plaintiff, were objectively inferior to Plaintiff's, including with respect to her experience working for Defendant, working for Mr. Huerta, and by their previously recorded employee evaluations, in which Plaintiff scored higher than Ms. Gloria.

18. Ms. Gloria, however, is significantly younger than Plaintiff, and identifies as Latino, whereas Plaintiff is a white person born and raised in Boston.

19. Defendant based its decision to assign Ms. Gloria to the EA job with Mr. Huerta and Ms. Bohnert, instead of Plaintiff, because of age, race, and national origin, and not a fair, non-discriminatory evaluation of Plaintiff's and Ms. Gloria's actual qualifications for the job.

20. On or about October 4, 2021, Plaintiff objected to Brett Trainor, her new manager, about the adverse actions described above, and then on that same day and then on October 12, 2021, to Amber Bonlie, of Defendant's HR department.

21. On October 14, 2021, Plaintiff had a subsequent conversation in which she objected to her illegal treatment to Marisa Ghiorzi, also an HR representative.

22. Ghiorzi criticized Plaintiff for the "tone" of her objections.

23. Defendant's employment of Plaintiff is covered by the minimum wage and overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 206 and § 207 ("the FLSA"), and the Massachusetts Overtime Law, G.L. c. 151, § 1A ("the Massachusetts Overtime Law").

24. The overtime requirements of the FLSA and Massachusetts Overtime Law require covered employers to pay their covered employees at 1.5 times their "regular rate of pay" for all

hours they are required or permitted to suffer work in excess of 40 hours worked in their regularly recurring seven-day workweeks. 29 U.S.C. § 207(a)(1).

25. Under Massachusetts law, "working time" includes "all time during which an employee is required to be on the employer's premises or to be on duty, or to be at the prescribed work site, and any time worked before or beyond the end of the normal shift to complete the work." 455 C.M.R. § 2.01.

26. Defendant's employment of Plaintiff throughout this time has also been subject to the Massachusetts Wage Act, G.L. c. 149, § 148 ("the Wage Act"), which requires a covered employer to pay its employees all their earned wages within no less than six days after the termination of their regularly recurring pay periods.

27. From on or after March 22, 2019 to the present, Defendant, by its agents, has scheduled Plaintiff to work Monday to Friday, from 8:00 a.m. to 5:00 p.m., in a regularly recurring seven-day workweek between Sunday and Saturday.

28. During this time, Defendant, by its agents, including Mr. Huerta, has knowingly required or permitted Plaintiff to work both before and after 8:00 a.m. and 5:00 p.m., and on weekends, but has not counted this time as compensable time worked in calculating straight time or overtime wages due Plaintiff.

29. In addition to considering the work Plaintiff performed outside of 8:00 a.m. to 5:00 p.m. Monday through Friday as non-compensable "off the clock" work, from on or after March 22, 2019 to the present, Defendant has uniformly considered one hour of Plaintiff's daily work schedule to comprise an unpaid "lunch break," despite the knowledge of its agents, including Mr. Huerta, that Plaintiff:

> 30. performs work throughout her 8:00 to 5:00 p.m. work day, and does not take uninterrupted lunch breaks of one hour in which she performs no work;

4

31. is required to perform work or required to be ready to perform or suffer work throughout her 8:00 a.m. to 5:00 p.m. work day, without regard to any supposed one hour lunch break;

32. is never fully relieved of all work-related duties for any period during her 8:00 a.m. to 5:00 p.m. work day, let alone for one hour each day, including because Plaintiff has always been required, at all times during her work day, to remain available to immediately respond to and perform work for her superiors, including Mr. Huerta.

## COUNT I
## VIOLATION OF THE FLSA-FAILURE TO PAY OVERTIME
### Violation of 29 U.S.C. § 207(a)(1)

33. Plaintiff incorporates by reference all allegations made herein.

34. For all hours of work performed in excess of 40 in a regularly recurring seven-day workweek, the § 207(a)(1) of the FLSA requires a covered employer to pay an employee at an overtime rate of pay that is not less than one and one-half [i.e. 1.5] times the regular rate at which the employee is employed.

35. The FLSA and its overtime requirement covers Defendant's employment of Plaintiff.

36. In violation of the FLSA, Defendant did not pay Plaintiff 1.5 times her regular rate of pay for the hours she worked in excess of 40 in her regularly recurring seven-day workweeks, including because it did not count as compensable time worked in computing overtime due Plaintiff: (1) the work Plaintiff performed "off the clock"; or (2) the one hour each day it illegally deemed as an unpaid, one-hour lunch break.

37. Plaintiff has suffered harm, injury and damages due to Defendant's illegal acts, including in that she was not paid overtime wages due and owing to her under the FLSA.

38. Plaintiff has previously filed an FLSA Consent Form in this action authorizing this suit under 29 U.S.C. § 216(b).

## COUNT II
## FAILURE TO PAY OVERTIME
## Violation of G.L. c. 151, § 1A

39. Plaintiff incorporates by reference all allegations made herein.

40. For all hours of work performed in excess of 40 in a regularly recurring seven-day workweek, the Massachusetts Overtime Law requires a Massachusetts employer to pay an employee at an overtime rate of pay that is not less than one and one-half [i.e. 1.5] times the regular rate at which the employee is employed.

41. The Massachusetts Overtime law covered Defendant's employment of Plaintiff.

42. In violation of the Massachusetts Overtime Law, Defendant did not pay Plaintiff 1.5 times her regular rate of pay for the hours she worked in excess of 40 in her regularly recurring seven-day workweeks, including because it did not count as compensable time worked in computing overtime due Plaintiff: (1) the work Plaintiff performed "off the clock"; or (2) the one hour each day it deemed as an unpaid, one-hour lunch break.

43. Plaintiff has suffered harm, injury and damages due to Defendant's illegal acts, including in that she was not paid overtime wages due and owing to her under the Massachusetts Overtime Law.

## COUNT III
## Race Discrimination-Adverse Employment Action
## Violation of G.L. c. 151B

44. Plaintiff incorporates by reference all allegations made herein.

45. Defendant's employment of Plaintiff was subject to the Massachusetts Fair Employment Practices Law, G.L. c. 151B.

46. It is unlawful under G.L. c. 151B for an employer to discriminate against an employee in the terms and conditions of the employee's employment on the basis of the employee's race.

47. Defendant, by its agents, discriminated against Plaintiff in the terms and conditions of her employment, on the basis of her race, by *inter alia* taking the following adverse actions against her:

48. demoting Plaintiff from her job as Mr. Huerta's EA;

49. not retaining or assigning Plaintiff as EA for Mr. Huerta and Ms. Bohnert; and

50. deliberately assigning Plaintiff to a job with diminished responsibilities, and no opportunity for advancement or pay raises, to humiliate and embarrass Plaintiff, thereby creating working conditions so intolerable that Plaintiff will quit.

51. Defendant's illegal acts have caused Plaintiff to suffer harm, injury, and damages.

**COUNT IV**
**National Origin Discrimination-Adverse Employment Actions**
**Violation of G.L. c. 151B**

52. Plaintiff incorporates by reference all allegations made herein.

53. It is unlawful under G.L. c. 151B for an employer to discriminate against an employee in the terms and conditions of the employee's employment on the basis of employee's national origin.

54. Defendant, by its agents, discriminated against Plaintiff in the terms and conditions of her employment, on the basis of her national origin, by *inter alia* taking the following adverse actions against her:

55. demoting Plaintiff from her job as Mr. Huerta's EA;

56. not retaining or assigning Plaintiff as EA for Mr. Huerta and Ms. Bohnert; and

57. deliberately assigning Plaintiff to a job with diminished responsibilities, and no opportunity for advancement or pay raises, to humiliate and embarrass her, thereby creating working conditions so intolerable that Plaintiff will quit.

58. Defendant's illegal acts have caused Plaintiff to suffer harm, injury, and damages.

## COUNT V
### Age Discrimination-Adverse Employment Actions
### Violation of G.L. c. 151B

59. Plaintiff incorporates by reference all allegations made herein.

60. It is unlawful under G.L. c. 151B for an employer to discriminate against an employee in the terms and conditions of the employee's employment on the basis of the employee's age.

61. Defendant, by its agents, discriminated against Plaintiff in the terms and conditions of her employment, on the basis of her age, by *inter alia* taking the following adverse actions against her:

62. demoting Plaintiff from her job as Mr. Huerta's EA;

63. not retaining or assigning Plaintiff as EA for Mr. Huerta and Ms. Bohnert; and

64. deliberately assigning Plaintiff to a job with diminished responsibilities, and no opportunity for advancement or pay raises, to humiliate and embarrass her, thereby creating working conditions so intolerable that Plaintiff will quit.

65. Defendant's illegal acts have caused Plaintiff to suffer harm, injury, and damages.

## COUNT VI
### Illegal Retaliation-Adverse Actions
### Violation of G.L. c. 151B, § 4(4)

66. Plaintiff incorporates by reference all allegations made herein.

67. It is illegal under G.L. c. 151B for an employer, by its agents, to retaliate against an employee for acts prohibited by G.L. c. 151B, including by opposing employment discrimination, or to subject an employee to a hostile work environment motivated by such retaliation.

68. Here, Ms. Ghiorzi, acting as an agent of Defendant, revealed her retaliatory animus toward Plaintiff, by criticizing Plaintiff's "tone" in objecting to Defendant's discriminatory personnel actions.

69. Defendant has taken adverse actions against Plaintiff because she opposed its discriminatory actions, including by permanently assigning her to a job with diminished responsibilities with no chance for advancement.

70. Plaintiff has been harmed, injured and damaged by Defendant's violation of G.L. c. 151B.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. Judgment awarding Plaintiff s all unpaid wages, overtime wages, liquidated damages, treble damages, attorneys' fees and costs, including as mandated by 29 U.S.C. § 216(b), and G.L. c. 149, § 150;

B. Judgment awarding her lost pay, damages for emotional distress, compensatory, punitive damages, liquidated damages, and attorney's fees, as provided by G.L. c. 151B, and any other applicable law.

C. An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

D. All such other and further relief to which Plaintiffs may show themselves to be justly entitled.

## JURY DEMAND

A trial by jury is demanded on all counts so triable.

        Respectfully submitted,

        PLAINTIFF MARGERY KAIN,

        By her Attorney,

        s/Daniel W. Rice
        Daniel W. Rice, BBO # 559269
        Harrington & Rice, P.C.
        738 Main Street
        Hingham, MA 02043
        (781) 964-8377 (mobile)
        dwr@harringtonrice.com

Dated: August 9, 2022