## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGERY KAIN, )<br><br>Plaintiff, )<br><br>v. )<br><br>LIBERTY MUTUAL GROUP INC., )<br><br>Defendant. ) | CIVIL ACTION NO. 22-10436-DPW |

### DEFENDANT'S ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT AND JURY DEMAND

Pursuant to Fed. R. Civ. P. 8 and 12, Defendant LIBERTY MUTUAL GROUP INC. ("Defendant") responds to the Third Amended Complaint and jury demand (the "Complaint") filed by Plaintiff MARGERY KAIN as follows:

### PARTIES[1]

1.    *Plaintiff Margery Kain is a resident of Boston, Suffolk County, Commonwealth of Massachusetts.*[2]

1.    To the best of Defendant's knowledge, information, and belief, Defendant admits the allegations in Paragraph 1 of the Complaint.

2.    *Defendant Liberty Mutual Group Inc. ("Defendant") is a corporation organized under the laws of the Commonwealth of Massachusetts, havinga usual place of business in Boston, Suffolk County, Commonwealth of Massachusetts.*

---

[1] Defendant has repeated the Plaintiff's use of headings in her complaint for ease of reference. To the extent such headings contain any factual allegation and a response is required, such allegations are denied.
[2] For ease of review, Defendant has included verbatim the allegations contained in the Complaint in italics and its responses directly underneath in normal font.

2.      Defendant is a corporation organized under the laws of the Commonwealth of Massachusetts, having a principal place of business in Boston, Suffolk County, Massachusetts.

## FACTUAL ALLEGATIONS

3.      *Plaintiff is a white female, over the age of 50. The United States of America is her country of national origin.*

3.      To the best of Defendant's knowledge, information, and belief, Defendant admits only that Plaintiff is over the age of 50 and identifies as a white female. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 1 of the Complaint.

4.      *Starting on or about March 13,2000, until it fired her on September 9, 2022, Defendant employed Plaintiff at its Boston headquarters as a "Senior Executive Assistant I" (hereinafter, "EA").*

4.      Defendant admits only that Plaintiff has held the title of Senior Executive Assistant I during her employment with Defendant, and had worked at its Boston office during part of her employment with Defendant prior to the termination of her employment on September 9, 2022. Otherwise denied.

5.      *This job required Plaintiff to provide support to high level executives, classified as "L2s".*

5.      Denied.

6.      *Most recently, Plaintiff performed this work for the L2 in charge of Defendant's Global Employees Experience Office, one Enrique Huerta. Throughout her employment, Plaintiff met or exceeded the performance expectations of her job.*

6.    Defendant admits only that Plaintiff previously performed work for Enrique Huerta while employed with Liberty Mutual.  To the extent Plaintiff seeks to characterize her written performance evaluations, those allegations purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents. Defendant denies the remaining allegations in Paragraph 6.

7.    *In or about October 2020, Defendant notified Mr. Huerta that it was relocating him from its Boston office to Spain.*

7.    Denied.

8.    *In or about this time, Defendant offered Plaintiff and certain other employees an early retirement option ("ERO").*

8.    Defendant admits only that on or about September 1, 2020 it offered Plaintiff an early retirement option (ERO) and that it offered an ERO to certain other employees in or about this time frame. Otherwise denied.

9.    *Plaintiff did not elect to accept the ERO based on Mr. Huerta's representations, in or about October 2020 and January 2021, that she would continue in her role as his EA.*

9.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 regarding why Plaintiff did not elect to accept the ERO. Otherwise denied.

10.    *In late February 2021, Defendant evaluated Plaintiffs job performance for the previous year as exceeding expectations.*

10.    Defendant admits only that in or around late January or early February 2021, Plaintiff received an annual performance review. The remaining allegations contained in Paragraph 10 purport to restate the terms of a written document, which speaks for itself. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of that document.

*11.    Despite this, Plaintiff was informed that because her pay grade had reached the maximum level (13), she was not eligible for a raise. She was further informed, however, that Mr. Huerta had succeeded in getting special permission for her to receive a $350.00 annual increase.*

11.    Defendant admits only that in early 2021, Plaintiff's job grade had reached the maximum compensation level, and that Mr. Huerta had secured an increase of approximately $350.00 for Plaintiff. Otherwise denied.

*12.    On or about April 9, 2021, Defendant informed Plaintiff and similarly situated EAs that their job titles would be changed to align with their "grade levels." Plaintiff and the other EAs were further informed that EAs, like Plaintiff, who had reached the highest pay grade level for supporting L2s (13), would never be eligible for raises.*

12.    Defendant admits only that on or about April 9, 2021, it informed Plaintiff and certain other EAs that there would be upcoming changes to their job titles and job families. Otherwise denied.

*13.    Plaintiff raised her objections about Defendant's policy to Mr. Huerta. After speaking with Defendant's HR department, Mr. Huerta told Plaintiff that HR had confirmed that Plaintiff and similarly situated employees could not ever receive raises.*

13.    Defendant admits only that Plaintiff complained about the upcoming changes to her job title and job family to Mr. Huerta. Otherwise denied.

*14.    In or about August 2021, Plaintiff was informed that she was being removed from her assignment with Mr. Huerta, and reassigned with other EAs to the "Procurement" department.*

14.    Defendant admits only that in or about August 2021, Plaintiff and other EAs were notified of an upcoming reorganization involving their roles.  Otherwise denied.

*15.    Subsequently, Plaintiff was informed that L2s would not be assigned to one EA, but would "pair up" and share an EA. EAs not so assigned were to be placed in a "pool" covering L2s and L3s. Plaintiff was re-assigned to covering three L3s from the Global Employee Team and one L3 and two L4s from the Sustainability Team.*

15.    Defendant admits only that Plaintiff was informed that she would no longer be assigned to one executive following the reorganization of her work assignments, and that EAs would support multiple executives. Otherwise denied.

*16.    Plaintiff subsequently learned that Defendant had selected one Tonya Gloria as the EA assigned to the new L2 pairing of Mr. Huerta and one Dawn Frazier Bohnert, the L2 in charge of Diversity, Equity, and Inclusion ("DEI").*

16.    Defendant lacks knowledge or information sufficient to admit or deny what Plaintiff learned, and admits only that Tonya Gloria at some point supported Mr. Huerta and Ms. Bohnert. Otherwise denied.

*17.    Ms. Gloria's qualifications to replace Plaintiff in this position or to be selected for it instead of Plaintiff were objectively inferior to Plaintiffs, including with respect to*

*her experience working for Defendant, working for Mr. Huerta, and by their previously*

*recorded employee evaluations, in which Plaintiff scored higher than Ms. Gloria.*

17.    Denied.

*18.    Ms. Gloria, however, is significantly younger than Plaintiff, and identifies as*

*Latino, whereas Plaintiff is a white person born and raised in Boston.*

18.    Defendant admits only, to the best of Defendant's knowledge, information, and

belief, that Ms. Gloria is younger than Plaintiff and identifies as Hispanic or Latino, and that

Plaintiff identifies as a white person. Defendant lacks information sufficient to admit or deny the

remaining allegations in Paragraph 18 of the Complaint, and therefore denies them.

*19.    Defendant based its decision to assign Ms. Gloria to the EA job with Mr. Huerta*

*and Ms. Bohnert, instead of Plaintiff, because of age, race, and national origin, and not a*

*fair, non-discriminatory evaluation of Plaintiff's and Ms. Gloria's actual qualifications*

*for the job.*

19.    Denied.

*20.    On or about October 4, 2021, Plaintiff objected to Brett Trainor, her new*

*manager, about the adverse actions described above, and then on that same day and then*

*on October 12, 2021, to Amber Bonlie, of Defendant's HR department.*

20.    Defendant admits only that Plaintiff spoke to Brett Trainor, her manager at the

time, on or about October 4, 2021 and that she spoke to Amber Bonlie on or about October 12,

2021. Otherwise denied.

*21.    On October 14, 2021, Plaintiff had a subsequent conversation in which she*

*objected to her illegal treatment to Marisa Ghiorzi, also an HR representative.*

21.    Defendant admits only that Plaintiff met with Marisa Ghiorzi on October 14, 2021. Otherwise denied.

*22.    Ghiorzi criticized Plaintiff for the "tone" of her objections.*

22.    Denied.

*23.    Defendant's employment of Plaintiff is covered by the minimum wage and overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 206 and § 207 ("the FLSA"), and the Massachusetts Overtime Law, G.L. c. 151, § 1A("the Massachusetts Overtime Law").*

23.    Paragraph 23 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*24.    The overtime requirements of the FLSA and Massachusetts Overtime Law require covered employers to pay their covered employees at 1.5 times their "regular rate of pay" for all hours they are required or permitted to suffer work in excess of 40 hours worked in their regularly recurring seven-day workweeks. 29 U.S.C. § 207(a)(1).*

24.    Paragraph 24 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*25.    Under Massachusetts law, "working time" includes "all time during which an employee is required to be on the employer's premises or to be on duty, or to be at the prescribed work site, and any time worked before or beyond the end of the normal shift to complete the work." 455 C.M.R. § 2.01.*

25.    Paragraph 25 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

26.    *Under Massachusetts law, a deduction of time for a meal break is only permissible if an employee is relieved all work-related duties during the so-called meal break. If the employee is not relieved of all work-related duties, the meal break has to be paid.*

26.    Paragraph 26 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

27.    *Defendant's employment of Plaintiff throughout this time has also been subject to the Massachusetts Wage Act, G.L. c. 149, § 148 ("the Wage Act"), which requires a covered employer to pay its employees all their earned wages within no less than six days after the termination of their regularly recurring pay periods.*

27.    Paragraph 27 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

28.    *From on or after March 22, 2019 until it fired her, Defendant, by its agents, scheduled Plaintiff to work Monday to Friday, from 8:00 a.m. to 5:00 p.m., in a regularly recurring seven-day workweek between Sunday and Saturday.*

28.    Defendant admits only that prior to her termination, Plaintiff had been scheduled to work for Defendant in her position as an Executive Assistant since March 22, 2019, generally from 8 a.m. to 5 p.m. Otherwise denied.

29.    *During this time, Defendant, by its agents, including Mr. Huerta, knowingly required or permitted Plaintiff to work both before and after 8:00 a.m. and 5:00 p.m., and on weekends, but didn't count this time as compensable time worked in calculating straight time or overtime wages due Plaintiff.*

29.    Denied.

*30.     The work Mr. Huerta required Plaintiff to perform on and off-the-clock frequently involved his personal affairs, including but not limited to setting up garbage collection for his home in Wellesley; setting up dry-cleaning delivery to his home and registering his complaints about the service with the dry cleaner; registering Mr. Huerta's children for school enrollment; dealing with IKEA customer service over Mr. Huerta's complaints about furniture he had purchased; making medical appointments for Mr. Huerta, Mr. Huerta's spouse and other family members; and planning and coordinating Mr. Huerta's family vacations in Cape Cod, New York City, Maine, and Altantis.*

30.     Defendant admits only that Plaintiff upon occasion assisted with managing the personal affairs of Mr. Huerta. Otherwise denied.

*31.     Indeed, as a practice, Plaintiff and other EAs are expected by Defendant to perform personal chores for the executives to whom they are assigned and are entrusted with executives' personal credit card and other information in order to carry out these chores.*

31.     Defendant admits only that Plaintiff, upon occasion assisted with managing the personal affairs of Mr. Huerta, and that as part of the management of both these personal affairs and certain business expense managements, Plaintiff had access to Mr. Huerta's personal credit cards. Otherwise denied.

*32.     During Plaintiff's employment, Defendant had no policy in place restricting when an executive like Mr. Huerta could call on Plaintiff or other EAs to perform business-related work or personal services, and correspondingly, Mr. Huerta and other executives observed no constraints in ordering Plaintiff and other EAs to perform work for them outside their regularly scheduled hours of work.*

32.      Denied.

*33.      In addition to considering the work Plaintiff performed outside of 8:00 a.m. to 5:00 p.m. Monday through Friday as non-compensable off-the-clock work, from on or after March 22, 2019 to the present, Defendant uniformly considered one- hour of Plaintiffs daily work schedule to comprise an unpaid "lunch break," despite the knowledge of its agents, including Mr. Huerta, that Plaintiff:*

33.      Defendant admits only that it provided Plaintiff a one-hour unpaid lunch break on days she was scheduled to work 8 a.m. to 5 p.m. Otherwise denied.

*34.      performed work throughout her 8:00 to 5:00 p.m. workday, and did not take uninterrupted lunch breaks of one hour in which she performed no work;*

34.      Denied.

*35.      was required to perform work or required to be ready to perform or suffer work throughout her 8:00 a.m. to 5:00 p.m. work day, without regard to any supposed one hour lunch break;*

35.      Denied.

*36.      was never fully relieved of all work-related duties for any period during her 8:00 a.m. to 5:00 p.m. work day, let alone for one hour each day, including because Plaintiff was always required, at all times during her work day, to remain available to immediately respond to and perform work for her superiors, including Mr. Huerta.*

36.      Denied.

## COUNT I
## VIOLATION OF THE FLSA-FAILURE TO PAY OVERTIME
## Violation of 29 U.S.C. § 207(a)(1)

*37.      Plaintiff incorporates by reference all allegations made herein.*

37.    Defendant repeats and incorporates by reference their responses to the allegations contained in Paragraphs 1-36 of the Complaint as if fully set forth herein.

38.    *For all hours of work performed in excess of 40 in a regularly recurring seven-day workweek, the § 207(a)(1) of the FLSA requires a covered employer to pay an employee at an overtime rate of pay that is not less than one and one-half [i.e. 1.5] times the regular rate at which the employee is employed.*

38.    Paragraph 38 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

39.    *The FLSA and its overtime requirement covered Defendant's employment of Plaintiff.*

39.    Paragraph 39 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

40.    *In violation of the FLSA, Defendant did not pay Plaintiff 1.5 times her regular rate of pay for the hours she worked in excess of 40 in her regularly recurring seven-day workweeks, including because it did not count as compensable time worked in computing overtime due Plaintiff: (1) the work Plaintiff performed "off the clock"; or (2) the one hour each day it illegally deemed as an unpaid, one-hour lunch break.*

40.    Denied.

41.    *Plaintiff has suffered harm, injury and damages due to Defendant's illegal acts, including in that she was not paid overtime wages due and owing to her under the FLSA.*

41.    Denied.

42.    *Plaintiff has previously filed an FLSA Consent Form in this action authorizing this suit under 29 U.S.C. § 216(b).*

42.    Admitted.

## COUNT II
## FAILURE TO PAY OVERTIME
## Violation of G.L. c. 151, § 1A

*43.    Plaintiff incorporates by reference all allegations made herein.*

43.    Defendant repeats and incorporates by reference their responses to the allegations contained in Paragraphs 1-42 of the Complaint as if fully set forth herein.

*44.    For all hours of work performed in excess of 40 in a regularly recurring seven-day workweek, the Massachusetts Overtime Law requires a Massachusetts employer to pay an employee at an overtime rate of pay that is not less than one and one-half [i.e. 1.5] times the regular rate at which the employee is employed.*

44.    Paragraph 44 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*45.    The Massachusetts Overtime law covered Defendant's employment of Plaintiff.*

45.    Paragraph 45 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*46.    In violation of the Massachusetts Overtime Law, Defendant did not pay Plaintiff 1.5 times her regular rate of pay for the hours she worked in excess of 40 in her regularly recurring seven-day workweeks, including because it did not count as compensable time worked in computing overtime due Plaintiff: (1) the work Plaintiff performed off-the-clock; or (2) the one hour each day it deemed as an unpaid, one-hour lunch break.*

46.    Denied.

47.    *Plaintiff has suffered harm, injury and damages due to Defendant's illegal acts, including in that she was not paid overtime wages due and owing to her under the Massachusetts Overtime Law.*

47.    Denied.

<u>**COUNT III**</u>
<u>**Race Discrimination-Adverse Employment Action**</u>
<u>**Violation of G.L. c. 151B**</u>

48.    *Plaintiff incorporates by reference all allegations made herein.*

48.    Defendant repeats and incorporates by reference their responses to the allegations contained in Paragraphs 1-47 of the Complaint as if fully set forth herein.

49.    *Defendant's employment of Plaintiff was subject to the Massachusetts Fair Employment Practices Law, G.L. c. 151B.*

49.    Paragraph 49 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

50.    *It is unlawful under G.L. c. 151B for an employer to discriminate against an employee in the terms and conditions of the employee's employment on the basis of the employee's race.*

50.    Paragraph 50 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

51.    *Defendant, by its agents, discriminated against Plaintiff in the terms and conditions of her employment, on the basis of her race, by inter alia taking the following adverse actions against her:*

51.    Denied.

52.    *demoting Plaintiff from her job as Mr. Huerta's EA;*

13

52.     Denied.

*53.     not retaining or assigning Plaintiff as EA for Mr. Huerta and Ms. Bohnert; and*

53.     Denied.

*54.     deliberately assigning Plaintiff to a job with diminished responsibilities, and no opportunity for advancement or pay raises, to humiliate and embarrass Plaintiff, thereby creating working conditions so intolerable that Plaintiff would quit.*

54.     Denied.

*55.     Defendant's illegal acts have caused Plaintiff to suffer harm, injury, and damages.*

55.     Denied.

*56.     Plaintiff has satisfied all administrative prerequisites to suit under G.L. c. 151B.*

56.     Paragraph 56 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

### COUNT IV
### National Origin Discrimination-Adverse Employment Actions
### Violation of G.L. c. 151B

*57.     Plaintiff incorporates by reference all allegations made herein.*

57.     Defendant repeats and incorporates by reference their responses to the allegations contained in Paragraphs 1-56 of the Complaint as if fully set forth herein.

*58.     It is unlawful under G.L. c. 151B for an employer to discriminate against an employee in the terms and conditions of the employee's employment on the basis of employee's national origin.*

58.     Paragraph 58 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

14

*59.    Defendant, by its agents, discriminated against Plaintiff in the terms and*

*conditions of her employment, on the basis of her national origin, by inter alia taking the*

*following adverse actions against her:*

59.    Denied.

*60.    demoting Plaintiff from her job as Mr. Huerta's EA;*

60.    Denied.

*61.    not retaining or assigning Plaintiff as EA for Mr. Huerta and Ms. Bohnert; and*

61.    Denied.

*62.    deliberately assigning Plaintiff to a job with diminished responsibilities, and no*

*opportunity for advancement or pay raises, to humiliate and embarrass her, thereby*

*creating working conditions so intolerable that Plaintiff would quit.*

62.    Denied.

*63.    Defendant's illegal acts have caused Plaintiff to suffer harm, injury, and*

*damages.*

63.    Denied.

## COUNT V
## Age Discrimination-Adverse Employment Actions
## Violation of G.L. c. 151B

*64.    Plaintiff incorporates by reference all allegations made herein.*

64.    Defendant repeats and incorporates by reference their responses to the allegations

contained in Paragraphs 1-63 of the Complaint as if fully set forth herein.

*65.    It is unlawful under G.L. c. 151B for an employer to discriminate against an*

*employee in the terms and conditions of the employee's employment on the basis of the*

*employee's age.*

65.    Paragraph 65 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

66.    *Defendant, by its agents, discriminated against Plaintiff in the terms and conditions of her employment, on the basis of her age, by inter alia taking the following adverse actions against her:*

66.    Denied.

67.    *demoting Plaintiff from her job as Mr. Huerta's EA;*

67.    Denied.

68.    *not retaining or assigning Plaintiff as EA for Mr. Huerta and Ms. Bohnert; and*

68.    Denied.

69.    *deliberately assigning Plaintiff to a job with diminished responsibilities, and no opportunity for advancement or pay raises, to humiliate and embarrass her, thereby creating working conditions so intolerable that Plaintiff would quit.*

69.    Denied.

70.    *Defendant's illegal acts have caused Plaintiff to suffer harm, injury, and damages.*

70.    Denied.

## COUNT VI
## Illegal Retaliation-Adverse Actions on the Basis of Protected Internal Complaints
## Violation of G.L. c. 151B, § 4(4)

71.    *Plaintiff incorporates by reference all allegations made herein.*

71.    Defendant repeats and incorporates by reference their responses to the allegations contained in Paragraphs 1-70 of the Complaint as if fully set forth herein.

72.    *It is illegal under G.L. c. 151B for an employer, by its agents, to retaliate against an employee for opposing acts prohibited by G.L. c. 151B, including by opposing employment discrimination, or to subject an employee to a hostile work environment motivated by such retaliation.*

72.    Paragraph 72 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

73.    *Here, Ms. Ghiorzi, acting as an agent of Defendant, revealed her retaliatory animus toward Plaintiff, by criticizing Plaintiff's "tone" in objecting to Defendant's discriminatory personnel actions.*

73.    Denied.

74.    *Defendant took adverse actions against Plaintiff because she opposed its discriminatory actions, including by permanently assigning her to a job with diminished responsibilities with no chance for advancement.*

74.    Denied.

75.    *Plaintiff has been harmed, injured and damaged by Defendant's violation of G.L. c. 151B.*

75.    Denied.

## ADDITIONAL ALLEGATIONS FOR POST-MCAD CHARGE AND POST-COMPLAINT PROTECTED ACTIVITY

76.    *Plaintiff incorporates by reference all allegations made herein.*

76.    Defendant repeats and incorporates by reference their responses to the allegations contained in Paragraphs 1-75 of the Complaint as if fully set forth herein.

77.    *On or about November 11, 2021, Plaintiff filed a Charge of Discrimination against Defendant with the Massachusetts Commission Against Discrimination*

*("MCAD") and the Equal Employment Opportunity Commission, alleging that*
*Defendant discriminated against her on the basis of her race, national origin, and age, in*
*violation of G.L. c. 151B; the ADEA, 29 U.S.C. § 623; and Title VII, 42 U.S.C. § 2000e,*
*and retaliated against her in violation of the anti-retaliation provisions of those laws, by*
*making internal complaints of discrimination. Plaintiffs' Charge of Discrimination is*
*attached hereto as Attachment A, and is hereby incorporated by reference.*

77.     Defendant admits only that it received Plaintiff's first Charge of Discrimination filed with the MCAD on or about January 24, 2022. The remaining allegations in Paragraph 77 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

78.     *By letter dated November 18, 2021, which is included with Attachment A, the*
*MCAD notified Plaintiff, through her attorney, that Defendant "had been advised" that it*
*was obligated to respond to Plaintiff's charge with a "position statement."*

78.     The allegations in Paragraph 78 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

79.     *On or about January 11, 2022, Plaintiff received a communication from one*
*Lauren Kasper of Defendant's Employee Relations team proposing that Plaintiff meet*
*with her so that Kasper might "understand" Plaintiff's "perspective".*

79.     The allegations in Paragraph 79 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

80. *Plaintiff responded to Kasper by informing her that she was represented by counsel at the MCAD, and as such, "I insist that my attorney Daniel Rice (cc'd here) be part of any conversation with Liberty Mutual about my employment, in light of that fact," then adding: "If you would still like to have a meeting, I will work with Attorney Rice to find an agreeable date and time to participate."*

80. The allegations in Paragraph 80 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

81. *Per the rules of the MCAD, Plaintiff's Charge of Discrimination included Plaintiff's attorney's Notice of Appearance, and an email from Plaintiff to Plaintiff's attorney in which Plaintiff affirmed her allegations under oath, showing Plaintiff's attorney's contact information.*

81. The allegations in Paragraph 81 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

82. *Upon information and belief, as an administrative practice, when it serves Charges of Discrimination on employers, the MCAD includes the Complainant's attorney's notice of appearance ,and the affirmation email.*

82. Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 82 of the Complaint.

83. *On January 14, 2022, Ms. Kasper responded to Plaintiffs request that her attorney be present for the meeting, without denying that Defendant had been served with the MCAD Charge, but by stating: "Courtney Evanchuk is one of Liberty Mutual's*

19

*employment attorneys. Your attorney may contact her if he wishes to do so. Courtney's phone number is XXX-XXXX-XXXX and her email address is xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx."*

83.     The allegations in Paragraph 83 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

*84.     At 1:25 p.m. on January 21,2022, Ms. Kasper contacted Plaintiff again, insisting that Defendant had the right to interview her regardless of whether she was represented by counsel at the MCAD:*

> *I wanted to follow-up with you from my prior email. In response to the meeting I scheduled for 1/11/22, you indicated you wouldn't speak with me without your attorney present. However, given that you are a current employee of Liberty Mutual, we do not allow for an attorney to be included in employee relations conversations. I am requesting to speak with you because I understand you have raised concerns related to your employment and I would like to discuss your concerns with you in detail. If you decline to speak to me, I will have to proceed with the investigation of your allegations with the current information I have available to me. Please let me know if you are willing to speak with me and, if so, some dates and times that would work well for us to have a discussion next week.*

84.     The allegations in Paragraph 84 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

85.    *Thereafter, at 3:27 p.m. on that same day, Plaintiff's counsel contacted Defendant's attorney, Attorney Evanchuk, and confirmed Plaintiff's previous assertion to Ms. Kasper that Plaintiff was represented at the MCAD by counsel, that the matter was*

> *... pending at the MCAD, which the MCAD indicates has been served on Liberty Mutual, and for which a Position Statement is due from Liberty Mutual. Please be advised that in light of this fact, it is inappropriate for Liberty Mutual to be 'investigating' Ms. Kain's charges by interviewing Ms. Kain, without my presence, or for that matter, outside the rules the MCAD has in place for discovery. I am therefore advising Ms. Kain to decline Ms. Kasper's attempt to interview her. If you wish to discuss this matter with me, please call me at the number below.*

85.    The allegations in Paragraph 85 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

86.    *At 5:03 p.m., Attorney Evanchuk replied to Plaintiffs counsel's email with the following:*

> *Thank you for your email. Our office has not to my knowledge received notice of Ms. Kain's charge. Would you kindly email me a copy of the charge at your convenience?*

> *Thank you also for confirming that you are directing your client not to participate in Liberty Mutual's investigation into her concerns, which the Company is conducting pursuant to its internal policy.*

86.    The allegations in Paragraph 86 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

*87.    On January 22, 2022, Plaintiff's counsel emailed a copy of Plaintiff's Charge of Discrimination to Attorney Evanchuk.*

87.    The allegations in Paragraph 87 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

*88.    On or about March 28, 2022, Defendant filed a Position Statement in response to Plaintiff's Charge of Discrimination with the MCAD, signed by Attorney Evanchuk as Defendant's attorney, but which, in contravention of the Rules and Regulations of the MCAD, is not subscribed under the pains and penalty of perjury by any representative of Defendant. See 804 C.M.R. § 1.05(8)(d)(1).*

88.    Defendant admits only that it filed a Position Statement on March 28, 2022, which inadvertently omitted a verification page but was signed by Ms. Evanchuk, in response to Plaintiff's Charge of Discrimination with the MCAD. Further answering, Defendant states that it submitted the inadvertently omitted verification page with the MCAD the following day on March 29, 2023, copying Plaintiff's counsel on the submission to the MCAD. The remaining allegations in Paragraph 88 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

*89.    Upon information and belief, the MCAD notified Defendant of the requirement that its Position Statement be subscribed under the pains and penalties of perjury by a company representative in the package it served Defendant with Plaintiff's Charge of Discrimination.*

89.    Denied.

*90.    On March 22, 2022, Plaintiff commenced this instant action against Defendant, alleging in Count I of her Complaint that Defendant had failed to pay her earned overtime wages mandated by the Fair Labor Standards Act, 29 U.S.C. § 207(a); in Count II that Defendant's failure to pay her earned overtime wages also violated the Massachusetts Overtime Law, G.L. c. 151, § 1A; and in Count III, that it failed to pay her earned wages on a timely basis, in violation of the Massachusetts Wage Act, G.L. c. 149, § 148. (Docket No. 1.)*

90.    The allegations in Paragraph 90 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

*91.    On or about March 31, 2022, three days after Defendant filed its Position Statement, Plaintiff withdrew her Charge of Discrimination from the MCAD, so that she could amend her Complaint pending in this action to include her discrimination and retaliation claims.*

91.    Defendant admits only that it received a notice from the MCAD indicating Plaintiff had withdrawn her Charge of Discrimination on or about April 1, 2022.  Defendant is without knowledge or information sufficient to admit or deny why Plaintiff withdrew her Charge from the MCAD. The remaining allegations in Paragraph 91 of the Complaint purport to restate

the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

92.    *On May 24, 2022, this Court allowed Plaintiff's motion for leave to amend her complaint in this action, and on that same day, Plaintiff filed her First Amended Complaint, which added the factual allegations and Counts related to the discrimination and retaliation charges she had made at the MCAD, including Count Ill-Race Discrimination; Count V-National Origin Discrimination; Count VII-Age Discrimination; and Count Vlll-Retaliation in Violation of G.L. c. 151B. (Docket No.'s 5 and 6.)*

92.    The allegations in Paragraph 92 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

93.    *On June 1, 2022 outside counsel for Defendant initiated contact with Plaintiff's counsel indicating that Defendant had authorized him to accept service pursuant to the "Waiving of Service" procedure set forth in Fed. R. Civ. P. 4(d).*

93.    The allegations in Paragraph 93 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

94.    *Thereafter, the First Amended Complaint was served on Defendant pursuant to the waiver agreement, with the executed Waiver filed with this Court on June 3, 2022. (Docket No. 7.)*

94.    Admitted.

95. *Following discussion between counsel in late July and early August 2022 in accordance with Local Rule 7.1 (a)(2), counsel for Plaintiff agreed to amend the First Amended Complaint by eliminating Counts IV, VI, VIII, and X, alleging that Defendant had subjected Plaintiff to a "hostile work environment" on the basis of her race, national origin, age, and protected activity respectively.*

95. Defendant admits only that the parties conferred regarding the content of Plaintiff's Complaint in the summer of 2022. The remaining allegations in Paragraph 95 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

96. *Upon leave being granted by this Court on August 9, 2022, Plaintiff filed her Second Amended Complaint on August 9, 2022. (Docket No.'s 13 and 14.)*

96. Admitted.

97. *Plaintiff's Second Amended Complaint alleges that Defendant failed to pay Plaintiff overtime in violation of the FLSA (Count I) and G.L. c. 151A (Count II); and that it discriminated against her on the basis of her race (Count III), national origin (Count IV), and age (Count V), and in retaliation for her protected activity in opposing employment discrimination, in violation of G.L. c. 151B (Count VI). (Docket No. 14.)*

97. The allegations in Paragraph 97 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

98. *Defendant filed its Answer to the Second Amended Complaint on August 23, 2022. (Docket No. 15.)*

98.    Admitted.

99.    *On August 22, 2022, at around 8:40 a.m., Tara Michalowski, a Senior Employee*

*Relations Consultant employed by Defendant contacted Plaintiff by email and told her*

*she had scheduled Plaintiff for a Microsoft Teams meeting that morning at 10:30 a.m.*

99.    The allegations in Paragraph 99 of the Complaint purport to restate the terms of

written documents, which speak for themselves. Defendant denies those allegations to the extent

that they vary from, misrepresent, or mischaracterize the terms of those documents.

100.    *In the email, Ms. Michalowski stated the following:*

> *Hi Margery, I work in Employee Relations and am currently reviewing a*
> *matter that I believe you may be able to provide some insight into. I would*
> *like to take some time to discuss more detail related to the matter and your*
> *perspective. I look forward to speaking with you.*

100.    The allegations in Paragraph 100 of the Complaint purport to restate the terms of

written documents, which speak for themselves. Defendant denies those allegations to the extent

that they vary from, misrepresent, or mischaracterize the terms of those documents.

101.    *That same morning, counsel for Plaintiff thereafter informed counsel*

*for Defendant about Ms. Michalowski's request:*

> *Hi, Ms. Kain got a notice this morning from Liberty Mutual Employee*
> *Relations to submit to an investigatory interview. Unless the*
> *interview/investigation can't in any possible way be not related to her*
> *claims- including in any manner in which she might respond to inquiries*
> *or information she might provide-this examination can't take place*
> *without my direct involvement. I am away on vacation at the moment, so I*

> *am not free to participate today. Could you please check in with Liberty*
>
> *and let me know what this is all about? (Also, please note that this same*
>
> *thing- attempt to contact Ms. Kain directly without my involvement-*
>
> *happened during the MCAD phase of this dispute, which Liberty's*
>
> *attorney apologized for.) For now, I am advising Ms. Kain to respond to*
>
> *Liberty Employee Relations by informing it that I have reached out to you*
>
> *for clarification before she proceeds with the requested interview.*

101.    The allegations in Paragraph 101 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

*102.    In response, counsel for Defendant replied:*

> *I hope you are enjoying your time off. With regard to the interview you*
>
> *mentioned, I can advise you that it is entirely unrelated to the claims Ms.*
>
> *Kain brings in this case. Further, any interviews would be conducted by*
>
> *internal employee relations personnel, and not Liberty Mutual in-house (or*
>
> *external) counsel. As such, the Rules of Professional Responsibility do not*
>
> *require you to be contacted about this interview, or that you be present for*
>
> *it.*
>
> *As I am sure you would find unsurprising, Liberty Mutual generally does*
>
> *not allow third parties, including personal counsel, to attend internal*
>
> *investigatory interviews. We hope that Ms. Kain participates in the*
>
> *interview, but if she chooses not to do so Liberty Mutual will not have the*
>
> *ability to consider any information she might offer regarding the subject*

> *matter of the interview, and will have to make any decisions without that*
> *information.*
>
> *Please confirm whether Ms. Kain will participate in the interview. I am*
> *happy to discuss if you like.*

102.    The allegations in Paragraph 102 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

*103.    Counsel for Plaintiff replied:*

> *Mark, based on your rep Ms. Kain will make herself available. I'll have her*
> *contact ER and handle the scheduling from there. TY*

103.    The allegations in Paragraph 103 of the Complaint purport to restate the terms of written documents, which speak for themselves. Defendant denies those allegations to the extent that they vary from, misrepresent, or mischaracterize the terms of those documents.

*104.    In reliance on Defendant's assurance that Ms. Michalowski's meeting was "entirely unrelated" to the claims she had made in her lawsuit, Plaintiff met with Ms. Michalowski and Ms. Michalowski's assistant, one Krista Hertel, on August 23, 2022, by a video conference call.*

104.    Defendant admits only that Plaintiff met with Tara Michalowski and Krista Hertel on August 23, 2022 by a video conference call. Defendant lacks knowledge or information sufficient to admit or deny whether Plaintiff met with Ms. Michalowski and Ms. Hertel in reliance on any statements by Defendant. Otherwise denied.

*105.    At the outset of the meeting, Ms. Michalowski refused Plaintiff's request that she reveal the purpose of the interview, and Plaintiff's request she be permitted to record the*

*interview. Ms. Michalowski also refused to provide Plaintiff with a reason for not allowing her to record the interview.*

105.    Defendant admits only that Ms. Michalowski informed Plaintiff that Defendant was not recording the interview and that Defendant did not consent to any recording of the interview. Otherwise denied.

*106.    At the outset of the interview, Plaintiff further related to Ms. Michalowski that she was concerned that the interview was related to her pending lawsuit against Defendant.*

106.    Denied.

*107.    In response to this expression of concern, Ms. Michalowski admitted she knew about Plaintiff's lawsuit, but parroting the representations made by Defendant's outside counsel by email the previous day, insisted that the interview was "entirely unrelated" to Plaintiff's lawsuit.*

107.    Denied.

*108.    Thereafter, Ms. Michalowski proceeded to begin referring to certain e-mails Plaintiff had sent from her company email, both by reading aloud selected excerpts of the emails, or by briefly displaying excerpts of the emails via screen sharing.*

108.    Admitted.

*109.    As she referred to the emails, Ms. Michalowski accused Plaintiff of having committed acts of misconduct by their transmission.*

109.    Denied.

*110.    As an example of this, Ms. Michalowski accused Plaintiff of having committed misconduct by having used her email to make a record of an e-mail she received from another EA, Valerie Mathis, in which Mathis had recorded the credit card number and*

*other personal information of an executive, Rakhi Kumar- formerly assigned to Mathis but now to Plaintiff- so that Plaintiff could help Ms. Kumar, as Ms. Mathis had, with personal affairs Ms. Kumar had her EAs carry out for her, such as planning her vacations.*

110.    Defendant admits only that Ms. Michalowski asked Plaintiff about having sent sensitive personal data of Rakhi Kumar to Plaintiff's personal email address. Defendant otherwise denies the allegations in Paragraph 110.

*111.    Plaintiff responded to Ms. Michalowski's accusation that by pointing out that Kumar knew that Ms. Mathis- Ms. Kumar's previous EA- had provided Plaintiff with this information to help her with her personal affairs, and frequently had Plaintiff access her information to help her with her personal matters.*

111.    Defendant admits only that Plaintiff stated during the interview that Ms. Mathis had provided Plaintiff with some of Ms. Kumar's information to assist Ms. Mathis. Defendant otherwise denies the allegations in Paragraph 111.

*112.    As another example, Ms. Michalowski also accused Plaintiff of violating Defendant's workplace "violence" policy because in emails to coworkers, Plaintiff had complained that one of their managers was "nuts", that another was a "coward", and that Plaintiff had speculated to another coworker she would be forced to depart Defendant's employment in a "blaze of glory".*

112.    Defendant admits only that Ms. Michalowski showed Plaintiff various communications and asked Plaintiff if she was aware of Defendant's policy regarding workplace violence, asked Plaintiff if she had ever called another employee a nut, asked Plaintiff if she had

ever called another employee a coward, and asked Plaintiff what she meant about going out in a blaze of glory. Defendant otherwise denies the allegations in Paragraph 112.

*113.    In response to Ms. Michalowski's accusations, Plaintiff related to Ms. Michalowski that she had shared her criticisms of her managers to her coworkers to object to the adverse working conditions to which the managers had subjected them, and that the words she used were not in any way violent.*

113.    Denied.

*114.    With respect to her use of the phrase "blaze of glory", Plaintiff explained to Ms. Michalowski she used it to convey to her coworker that in light of her lawsuit, she predicted that Defendant would fire her for complaining about the unfair and illegal employment practices to which Defendant had subjected her and other EAs, including by not paying them their overtime.*

114.    Denied.

*115.    Throughout the time Ms. Michalowski referred to the emails to accuse Plaintiff of misconduct, Plaintiff consistently responded by asking Ms. Michalowski to show her the entire emails to which she was referring and the email chains, and not just the excerpts, so that she could explain their context.*

115.    Defendant admits only that Plaintiff on a couple of occasions may have asked Ms. Michalowski during the interview to scroll through entire emails, and that Ms. Michalowski did so. Otherwise denied.

*116.    Ms. Michalowski refused to do this.*

116.    Denied.

*117.    Plaintiff also asked Ms. Michalowski if anyone employed by Defendant had complained about the contents of the emails.*

117.    Denied.

*118.    Ms. Michalowski refused to answer this question.*

118.    Denied.

*119.    At the end of the meeting, Ms. Michalowski ordered Plaintiff to destroy any of Defendant's documents that were in her possession.*

119.    Admitted.

*120.    On September 8, 2022, Ms. Michalowski ordered Plaintiff to meet again with Ms. Hertel and her again.*

120.    Denied.

*121.    Ms. Michalowski once again proceeded to begin showing screenshots of email excerpts to Plaintiff, and demanded that Plaintiff admit sending them.*

121.    Defendant admits only that Ms. Michalowski showed Plaintiff communications and asked Plaintiff about them and whether she had sent them. Otherwise denied.

*122.    As she had acknowledged sending the emails in the previous meeting, and Ms. Michalowski had refused to permit her to see the entire emails and email chains so that she might explain their context, Plaintiff told Ms. Michalowski that Defendant's motive for having curated the emails to make her look like she had committed misconduct was the plainly retaliatory one of inventing a reason to fire her for bringing her lawsuit against Defendant, and that she did not wish to proceed further.*

122.    Denied.

*123.    Ms. Michalowski ended the meeting.*

123.    Defendant admits only that Ms. Michalowski's meeting with Plaintiff ended after Ms. Michalowski finished her questions. Otherwise denied.

*124.    The next day, September 9, 2022, Ms. Michalowski called Plaintiff to another meeting by videoconference.*

124.    Admitted.

*125.    With Ms. Hertel once again present, Ms. Michalowski told Plaintiff that she was fired for being in violation of Defendant's "workplace safety policy".*

125.    Defendant admits only that Ms. Michalowski, with Ms. Hertel present, told Plaintiff that Plaintiff was being terminated for violations of Defendant's policies, which included, but was not limited, to Defendant's Workplace Violence Policy. Otherwise denied.

*126.    Ms. Michalowski added that Plaintiff wouldn't get any severance, and that her benefits would terminate as of midnight.*

126.    Defendant admits only that Ms. Michalowski informed Plaintiff that her Liberty Mutual benefits would terminate as of midnight that day. Otherwise denied.

*127.    Defendant's investigation of Plaintiff was not prompted by any legitimate concern about Plaintiff's conduct, and certainly not any legitimate concern or good faith conclusion that Plaintiff had committed any act comprising a threat of violence, workplace safety, or any breach of company protocol that actually prejudiced Defendant in anyway, let alone one that would justify Defendant's termination of Plaintiff's employment after 22 years of unblemished service in which Plaintiff's performance was consistently ranked as exceeding expectations.*

127.    Denied.

*128.    To the contrary, Defendant, by its agents, investigated Plaintiff to establish an-after-the-fact legal defense for its illegally motivated decision to have replaced Plaintiff with Ms. Gloria, because Ms. Gloria's qualifications for the position were so objectively inferior to Plaintiff's, that Defendant, by its agents, realized it had no chance to convince any factfinder that it had a legitimate, non- discriminatory for replacing Plaintiff with Ms. Gloria, and therefore would be found liable for violating G.L. c. 151B, as Plaintiff alleged in her MCAD Charge and in this action.*

128.    Denied.

*129.    Defendant, by its agents, also investigated Plaintiff to contrive a basis to fire her, so that EAs similarly situated to Plaintiff would be in fear of joining Plaintiff in the claims she has made for unpaid overtime wages in this action under the FLSA and G.L. c. 151, in particular, because Defendant, by its agents, is aware that due to its timekeeping practices and the behaviors of the high-ranking executives to whom Plaintiff and similarly situated EAs are assigned, it has no realistic defense to Plaintiffs off-the-clock work claims, nor would it of any similarly situated EAs.*

129.    Denied.

*130.    Defendant's agents' assertions that Ms. Michalowski's meeting with Plaintiff had nothing to do with Plaintiffs lawsuit were false.*

130.    Denied.

*131.    Indeed, but for Plaintiffs lawsuit, no investigation of Plaintiffs conduct ever would have been undertaken, and Plaintiff would not have been fired.*

131.    Denied.

## COUNT-VII
## Retaliation in Violation of the FLSA, 29 U.S.C. § 215(a)(3)

*132.    Plaintiff incorporates by reference all allegations made herein.*

132.    Defendant repeats and incorporates by reference its responses to the allegations contained in Paragraphs 1-131 of the Complaint as if fully set forth herein.

*133.    It is illegal under the FLSA for an employer, by its agents, to take an adverse action against an employee for filing a complaint alleging a violation of the FLSA. 29 U.S.C. §215(a)(3).*

133.    Paragraph 133 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*134.    By making claims under the FLSA in her Complaint, First Amended Complaint and Second Amended Complaint ("the complaints"), Plaintiff engaged activity protected by the FLSA.*

134.    Paragraph 134 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*135.    Defendant, by its agents, knew that Plaintiff engaged in this protected activity including because it was served with Plaintiff's complaints.*

135.    Defendant admits only that was served with Plaintiff's complaints. The remaining allegations in Paragraph 135 assert legal conclusions to which no response is required.

*136.    On September 9, 2022, after it had been served with the complaints, Defendant, by its agents, fired Plaintiff for engaging in the protected activity of filing a complaint against it under the FLSA, in violation of 29 U.S.C. § 215(a)(3).*

136.    Denied.

*137.    Defendant's illegal acts have caused Plaintiff to suffer harm, injury, and damages.*

137.    Denied.

## COUNT VIII
## Retaliation in Violation of G.L. c. 151, § 19(5)

*138.    Plaintiff incorporates by reference all allegations made herein.*

138.    Defendant repeats and incorporates by reference their responses to the allegations contained in Paragraphs 1-137 of the Complaint as if fully set forth herein.

*139.    It is illegal under G.L. c. 151, § 19(5) for an employer to take adverse actions against an employee for making a claim under G.L. c. 151, § 1A, the Massachusetts Overtime Law.*

139.    Paragraph 139 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*140.    By making claims under G.L. c. 151, § 1A in her Complaint, First Amended Complaint, and Second Amended Complaint ("the complaints"), Plaintiff engaged activity protected by G.L. c. 151, § 1 A.*

140.    Paragraph 140 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*141.    Defendant, by its agents, knew that Plaintiff engaged in this protected activity including because it was served with Plaintiff's complaints.*

141.    Defendant admits only that it was served with Plaintiff's complaints. The remaining allegations in Paragraph 141 assert legal conclusions to which no response is required.

*142.    On September 9, 2022, after it had been served with the complaints, Defendant, by its agents, fired Plaintiff for engaging in the protected activity of filing a complaint against it under G.L. c. 151, § 1A, in violation of G.L. c. 151, § 19(5).*

142.    Denied.

*143.    Defendant's illegal acts have caused Plaintiff to suffer harm, injury, and damages.*

143.    Denied.

### COUNT IX
### Retaliation in Violation of G.L. c. 151B, § 4(4)

*144.    It is illegal under G.L. c. 151B, § 4(4) for an employer to take adverse actions against a person for filing a Charge of Discrimination under G.L. c. 151B, or making claims against it under G.L. c. 151B in court.*

144.    Paragraph 144 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*145.    In her Charge of Discrimination, First Amended Complaint, and Second Amended Complaint ("the complaints"), Plaintiff engaged in this protected activity by making allegations that Defendant had subjected her to adverse employment actions in violation of G.L. c. 151B.*

145.    Paragraph 145 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

*146.    Defendant, by its agents, knew that Plaintiff engaged in this protected activity including because it was served with Plaintiff's Charge of Discrimination and complaints.*

146.    Defendant admits only that it was served with Plaintiff's Charge of Discrimination and was served with complaints filed by Plaintiff. The remaining allegations in Paragraph 146 assert legal conclusions to which no response is required.

*147.    Defendant, by its agents, knew that Plaintiff had engaged in these protected activities before it fired Plaintiff on September 9, 2022.*

147.    Defendant admits only that it was served with the complaints prior to September 9, 2022. The remaining allegations in Paragraph 147 assert legal conclusions to which no response is required.

148.    *Defendant, by its agents, fired Plaintiff on September 9, 2022, because she engaged in activities protected by G.L. c. 151B, in violation of G.L. c. 151B, § 4(4).*

148.    Denied.

149.    *Defendant's illegal acts have caused Plaintiff to suffer harm, injury, and damages.*

149.    Denied.

150.    *Plaintiff has satisfied all administrative prerequisites to suit under G.L. c. 151B. (Attachment B.)*

150.    Paragraph 150 of Plaintiff's Complaint asserts legal conclusions to which no response is required.

Defendant denies all allegations not expressly admitted above.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint, in whole or in part, fails to state a claim against the Defendant upon which relief can be granted.

### Second Affirmative Defense

Defendant has complied with all laws and regulations and otherwise satisfied its statutory and common law obligations toward Plaintiff.

### Third Affirmative Defense

Plaintiff's claims are barred to the extent they arise beyond the applicable statute of limitations period.

## Fourth Affirmative Defense

The Complaint, and each and every cause of action alleged therein, is barred, in whole or in part, because Defendant took all reasonable steps to prevent any alleged discrimination, harassment, and/or retaliation once Defendant was made aware of Plaintiff's complaints.

## Fifth Affirmative Defense

Defendant has established and complied with policies and procedures for the prevention and detection of unlawful discriminatory practices by employees and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise.

## Sixth Affirmative Defense

Any alterations or modifications to Plaintiff's job duties were justified, not based on discriminatory reasons, and were justified based upon a bona fide business necessity and based upon bona fide occupational qualifications.

## Seventh Affirmative Defense

Claimant is barred from recovering damages to the extent she has failed to mitigate her damages, including the failure of Claimant to accept work or to exercise diligence in seeking employment.

## Eighth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, as there was no discriminatory intent as Defendant's alleged actions were made in good faith and based on legitimate nondiscriminatory business reasons.

54274064.v1-OGLETREE

**Ninth Affirmative Defense**

Plaintiff's claims are barred by reason of laches, estoppel and/or waiver.

**Tenth Affirmative Defense**

Plaintiff's claims are barred by the doctrine of unclean hands.

**Eleventh Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, on the ground that to the extent Plaintiff worked any time beyond forty hours in a week, such work was not authorized by Defendant and performed without Defendant's knowledge.

**Twelfth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, on the ground that to the extent Plaintiff worked any time beyond forty hours in a week, the time spent on such work was de minimis and not compensable or recoverable.

**Thirteenth Affirmative Defense**

Plaintiff was compensated for all hours worked in excess of 40 hours in any particular workweek at a rate not less than that required by the overtime provisions of the FLSA and G.L. c. 151, § 1A.

**Fourteenth Affirmative Defense**

Plaintiff is estopped from pursuing the claims set forth in the Complaint by reason of her own acts, omissions, and course of conduct, including, but not limited to, her failure to accurately record and report her time as required by Defendant and her misconduct in violation of Defendant's policies.

### Fifteenth Affirmative Defense

To the extent Defendant notified, authorized, and permitted Plaintiff to take all required rest and/or meal periods at all times; any failure by Plaintiff to take all required rest and/or meal periods was caused by Plaintiff's own acts.

### Sixteenth Affirmative Defense

Any claimed violation of the FLSA or G.L. c. 151, § 1A by Defendant was not willful.

### Seventeenth Affirmative Defense

Any unlawful or wrongful acts, to the extent they exist, taken by Defendant's agents or employees were outside the course and scope of their authority and such acts, if any, were not authorized, ratified, or condoned by Defendant nor did Defendant know nor should have known of such acts.

### Eighteenth Affirmative Defense

All actions taken by Defendant regarding Plaintiff's employment or affecting Plaintiff were based on legitimate, non-discriminatory, non-retaliatory reasons.

### Nineteenth Affirmative Defense

Plaintiff's claims are barred to the extent Plaintiff has failed to exhaust administrative remedies as required by her Wage Act and discrimination claims.

### RESERVATION OF RIGHTS

Defendant reserves the right to plead, assert, and rely upon all proper affirmative and other defenses lawfully available, including those which may be disclosed or discovered through further assertions by Plaintiff, through discovery, or otherwise.

WHEREFORE, Defendant respectfully requests that judgment be entered dismissing with prejudice the claims of Plaintiff, with reasonable attorneys' fees and costs assessed against the

Plaintiff, and that the Court grant to Defendant such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requested a jury trial. Defendant asserts that this matter should be dismissed as a matter of law in advance of any trial, but in the event that this matter proceeds to trial, Defendant demands a jury trial on all issues so triable.

LIBERTY MUTUAL GROUP INC.,

By its attorneys,

*/s/Mark H. Burak*
Mark Burak (BBO #558805)
Laurielle Howe (BBO #704562)
OGLETREE, DEAKINS, NASH, SMOAK &
    STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone:  617.994.5700
Facsimile:  617.994.5701
mark.burak@ogletreedeakins.com
laurielle.howe@ogletreedeakins.com

Dated:  January 10, 2023

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") this 10th day of January, 2023.

<u>/s/ Mark H. Burak</u>
Mark H. Burak