UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10436-RGS

MARGERY KAIN

v.

LIBERTY MUTUAL GROUP INC.

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

March 20, 2024

STEARNS, D.J.

Margery Kain brings this action against her former employer, Liberty Mutual Group, Inc. She alleges that Liberty Mutual failed to pay her overtime for work performed in excess of 40 hours in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1) (Count I), and Mass. Gen. Laws ch. 151, § 1A (§ 1A) (Count II); discriminated against her based on her race (Count III), national origin (Count IV), and age (Count V) in violation of the antidiscrimination provisions of Mass. Gen. Laws ch. 151B; and retaliated against her for complaining internally and filing this lawsuit in violation of the antiretaliation provisions of Mass. Gen. Laws ch. 151 (Count VIII), Mass. Gen. Laws ch. 151B (Counts VI & IX), and the FLSA (Count VII). The parties have filed cross-motions for partial summary judgment. For the

following reasons, the court will deny Kain's motion and allow in part[1] and deny in part Liberty Mutual's motion.

## BACKGROUND

Liberty Mutual hired Kain, a white female, as an Executive Assistant (EA) on March 13, 2000. In this role, Kain was expected to provide administrative support to high-level executives – for example, managing their calendars, preparing materials for meetings, triaging communications, coordinating and optimizing executive travel plans, and helping to keep the executives focused and on schedule.

As an EA, Kain was not assigned any set schedule but instead had the freedom to determine her own start and end time. Kain maintains that she typically arrived at the office by 8:00 AM and left at 5:30 PM. During her deposition, however, she testified that she "would come in at 8:30 in the morning and leave at roughly 5:00, 5:15 at night." Sullivan Decl. [Dkt # 73], Ex. B at 268:3-5. Liberty Mutual did not require Kain to clock in or out of work for her shifts. It did, however, maintain timesheets, and as part of its

---

[1] Kain does not dispute that the retaliatory act alleged in Count VI predated her protected activity. Nor does she dispute that, if a private right of action exists under Mass. Gen. Laws ch. 151, she failed to exhaust her administrative remedies. The court accordingly allows the motion for summary judgment on Count VI and Count VIII without further analysis.

timekeeping policies, it required EAs to record hours worked and taken off and to report any time worked outside of their normal schedule.

At some point in 2018, Kain began supporting Enrique Huerta, an "L2" executive within the company.[2] At the time, Huerta led Liberty Mutual's Global Retail Markets Transformation department. In 2020, however, he transitioned to leading the Global Employee Experience subgroup of the Talent and Enterprise Services department. Kain maintains that, both before and after his promotion, Huerta would often delegate personal tasks to her and assign her work requiring immediate attention outside of her normal working hours (e.g., on weekends or late at night). She also asserts that, given the closeness of their desks, Huerta could see everything she did from his office, including her missed or delayed meal breaks. Huerta disputes these allegations.

In the fall of 2020, Huerta made plans to return home to Spain. At about the same time, on September 1, 2020, Liberty Mutual offered Kain an early retirement package. Kain allowed the offer to lapse based on Huerta's

---

[2] Liberty Mutual categorized its executives by how many reporting levels removed from the CEO they were. An L1 executive is one level removed (i.e, reports directly to the CEO); an L2 executive is two levels removed (i.e., reports to an L1 executive, who reports to the CEO); and so on. For most of her career, Kain supported L2 executives.

assurances that her job would not substantively change because of his relocation.

In 2021, Liberty Mutual reorganized the EA group within the Talent and Enterprise Services department. Nine EAs were laid off. Of the remaining thirteen EAs, five were each assigned to support two L2 executives, and eight were each assigned to support between five to eleven L3 and L4 executives.

Although Kain had supported Huerta for several years, Huerta was assigned to another EA, Tonya Gloria. Gloria was 43 years old at the time and self-identified as Hispanic-Latino. She had been with Liberty Mutual for eight years and had supported the L2 executive with whom Huerta was paired, Dawn Frazier-Bohnert, since 2015. Kain, for her part, was assigned to several L3 and L4 executives. Kain was the only EA at her paygrade level to support L3 and L4 executives; the other seven EAs were a grade level below her.

Displeased with her new placement, Kain filed this lawsuit in January of 2022, asserting claims of wage violations, discrimination, and retaliation. While gathering documents responsive to Kain's claims, Liberty Mutual uncovered what it believed to be several problematic communications between Kain and her colleagues. Rachel Domzal, Director of Global

Employee Relations & Talent Practices, assigned Tara Michalowski, one of her subordinates, to investigate. Although investigations were typically assigned by email, Domzal appears to have verbally enlisted Michalowski. Michalowski allegedly did not allow Kain any opportunity to offer context or witnesses during her investigation. Michalowski ultimately made the decision to terminate Kain's employment on September 9, 2022.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### I. Kain's Motion for Partial Summary Judgment

Kain moves for summary judgment on her wage claims. To establish a violation of the overtime provisions of the FLSA and § 1A she must show not

only that she worked in excess of 40 hours per week but also that her "employer suffered or permitted such work, that is, [that] the failure to compensate for such work was done with the knowledge of the employer." *Andrews v. Weatherproofing Techs., Inc.*, 277 F. Supp. 3d 141, 151 (D. Mass. 2017); *see also Mullally v. Waste Mgmt. of Massachusetts, Inc.*, 452 Mass. 526, 531 (2008) (noting that § 1A was intended to be identical to the FLSA). "Knowledge may be actual or constructive, and, thus, an employer is liable for its employees' unpaid overtime work if it knew or should have known that the employees were working overtime." *Id.*; *see also Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 44 (1st Cir. 2013).

The court declines to enter judgment as a matter of law on Counts I and II. Even assuming that Kain did, in fact, work more than forty hours each week or skip meal breaks (something which Liberty Mutual disputes), the record is ambiguous as to whether Liberty Mutual had constructive knowledge of either issue. A juror could, for example, reasonably infer from the location of Kain's desk in relation to Huerta's office and how closely the two worked together that Huerta knew or, at the very least, should have known that she was underreporting her hours and not taking advantage of required breaks. That same juror, however, could just as reasonably reach the opposite conclusion based on the flexibility of EA scheduling, Huerta's

frequent travel, and Kain's failure to use the existing overtime reporting system.

## II. Liberty Mutual's Motion for Summary Judgment

The court assesses the validity of Kain's discrimination and retaliation claims using the burden-shifting paradigm set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008). Under this paradigm, a plaintiff bears the initial burden "to show . . . a prima facie case." *Blare v. Husky Injection Molding Sys. Bos., Inc.*, 419 Mass. 437, 441 (1995). If the plaintiff makes the requisite showing, the burden shifts to the employer to "articulat[e] a legitimate, nondiscriminatory reason for" the action. *Id.* If the defendant proffers a legitimate, nondiscriminatory reason for its action, the burden of production shifts back to the employee, requiring her to provide evidence that "the employer's articulated justification is not true but a pretext." *Id.* at 443. Where, as here, the claims arise only under Massachusetts state law, the plaintiff need not offer evidence of discriminatory animus to satisfy her burden at the pretext stage. *See id.* (noting that "Massachusetts is a pretext only jurisdiction").

### a. Race, National Origin, and Age Discrimination

To establish a prima facie case of discrimination, a plaintiff must proffer evidence that (1) she is a member of a protected class; (2) she performed her job "at an acceptable level"; and (3) she experienced an adverse employment action. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 681 (2016), quoting *Blare*, 419 Mass. at 441. Only the third element is in dispute here.

Kain contends that she was, in effect, demoted because she had fewer (and less weighty) job responsibilities after the 2021 reorganization. For example, she asserts that, while she led meetings and handled expenses and timesheets for team members pre-reorganization, she only managed schedules post-reorganization. Liberty Mutual does not appear to dispute that Kain's responsibilities shifted as she claims but maintains that, because Kain ultimately did not experience any loss in salary or title, no reasonable juror could find that she was "demoted" or otherwise subjected to an adverse employment action.

The court is not convinced that a reasonable juror, viewing the evidence in the light most favorable to Kain, could only find in Liberty Mutual's favor. While it is true that, to qualify as an adverse employment action, the harm felt must satisfy an objective standard, Kain offers

something more than "subjective feelings of disappointment or disillusionment." *MacCormack v. Bos. Edison Co.*, 423 Mass. 652, 664 (1996). She adduces evidence that, despite retaining the same title and salary post-reorganization,[3] she experienced a significant decrease in job responsibilities. Because a reasonable juror could find that, in light of Kain's prior responsibilities, being relegated to a position involving only calendar management materially disadvantaged the terms and conditions of her employment, *see King v. City of Bos.*, 71 Mass. App. Ct. 460, 470-471 (2008) (an adverse employment action is one that negatively impacts a material term or condition of employment), it would be inappropriate for the court to rule as a matter of law on this record.

Liberty Mutual alternatively asserts that, even assuming Kain meets her stage one burden, it has proffered a legitimate, non-discriminatory rationale for its decision, and Kain cannot establish pretext. But again, the court finds summary judgment unwarranted. Kain proffers evidence that she had more experience than and superior performance evaluations to Gloria. She also casts doubt on the assertion that Gloria had gained unique skills in her role supporting Frazier-Bonhert. A reasonable juror could infer

---

[3] The court assumes, for the purposes of this motion only, that the application of salary cap had no impact on the terms or conditions of her employment.

from such circumstances that Liberty Mutual's stated rationale was "not the real reason[] for" its employment action. *Bulwer*, 473 Mass. at 682, quoting *Wheelock Coll. v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 139 (1976). Under Massachusetts law, no more is needed to satisfy the third *McDonnell* stage.

### b. Retaliation

To establish a prima facie case of retaliation, a plaintiff must "show that [s]he engaged in protected conduct, that [s]he suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.'" *Mole v. Univ. of Massachusetts*, 442 Mass. 582, 591-592 (2004) (footnotes omitted), quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991); *see also Blackie v. State of Maine*, 75 F.3d 716, 722 (1st Cir. 1996). Liberty Mutual focuses on the third element, arguing that no reasonable juror could find a causal connection.

The court disagrees. While it is true, as Liberty Mutual notes, that Kain first engaged in protected activity eleven months before her termination, the investigation leading to her termination appears to have begun a mere two months after Liberty Mutual executed a waiver of service in this action. It would not be outside the realm of the reasonable for a juror, faced with this timing, to infer that Liberty Mutual, although not upset about Kain's initial

complaint, wanted to punish Kain for escalating the case to federal court. The court also finds it significant – both at the prima facie stage and at the pretext stage – that the record contains evidence that Michalowski, the relevant decisionmaker, had knowledge of the lawsuit while conducting her investigation. Notes from a September 8 meeting, for example, seem to confirm that Kain directly raised concerns of retaliation to Michalowski. *See, e.g.*, Michalowski Decl. [Dkt # 61], Ex. A at 12. Kain also identifies a host of alleged procedural irregularities during the investigatory process that a juror could view as indicative of a coverup.

The court should not be understood, by the above, to opine on the merits of any surviving claims. All it holds here is that there is sufficient ambiguity for the claims to proceed to trial.

### III.  Motions to Strike

Kain moves to strike Liberty Mutual's supplemental answer to Interrogatory Number 4 on the ground that Liberty Mutual failed to list Elizabeth Duggan and Rachel Domzal in its initial disclosures. Given ambiguity about whether Kain nonetheless had notice of their involvement, however, the court declines to strike the testimony. Instead, to level the playing field, it will allow Kain to depose Duggan and Domzal on the limited issue of how the messages were located and how these messages were

referred to Michalowski. Each deposition may be no longer than two (2) hours in length. It must be noticed within one (1) week and occur within three (3) weeks of the date of this Order.

The court will grant similar relief with respect to Enrique Huerta. To the extent that Liberty Mutual intends to rely on the testimony of Huerta at trial, it must produce Huerta for a deposition by Kain. The deposition may be no longer than seven (7) hours in length. It must be noticed within one (1) week and occur within three (3) weeks of the date of this Order.[4]

Finally, the court denies Liberty Mutual's motion for the simple reason that it has not relied on any of the challenged testimony in reaching a decision. The court notes, however, that to the extent Kain intends to rely on the demographic chart of the DEI group referenced in her Additional Statement of Material Facts at trial, she must produce a copy to Liberty Mutual within one (1) week of this Order.

Fact discovery remains closed in all other respects. It is only reopened for the specific purposes identified in this Order.

---

[4] It may be conducted remotely (e.g., by Zoom) if Huerta remains based in Spain.

## ORDER

For the foregoing reasons, Kain's motion for partial summary judgment is <u>DENIED</u> and Liberty Mutual's motion for summary judgment is <u>ALLOWED IN PART</u> and <u>DENIED IN PART</u>.  The court will enter judgment in Liberty Mutual's favor on Counts VI and VIII.  The Clerk shall schedule all remaining claims for trial.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE